**No. 23-40217**

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

Texas Medical Association; Tyler Regional Hospital, L.L.C.; Doctor Adam Corley,
Plaintiffs-Appellees,

v.

United States Department of Health and Human Services; Department of Labor;
Department of the Treasury; Xavier Becerra, Secretary, U.S. Department of Health
and Human Services; Julie A. Su, Acting Secretary, U.S. Department of Labor;
Janet Yellen, Secretary, U.S. Department of Treasury,
Defendants-Appellants.

---

LifeNet, Incorporated; East Texas Air One,
Plaintiffs-Appellees,

v.

United States Department of Health and Human Services; Xavier Becerra, Secretary,
U.S. Department of Health and Human Services; United States Department of the
Treasury; Janet Yellen, Secretary, U.S. Department of Treasury; United States
Department of Labor; Julie A. Su, Acting Secretary, U.S. Department of Labor;
United States Office of Personnel Management; Kiran Ahuja,
Defendants-Appellants.

---

On Appeal from the United States District Court
for the Eastern District of Texas

---

### ADDENDUM TO BRIEF FOR APPELLANTS

---

BRIAN M. BOYNTON
*Principal Deputy Assistant Attorney
General*

DAMIEN M. DIGGS
*United States Attorney*

JOSHUA M. SALZMAN
KEVIN B. SOTER
*Attorneys, Appellate Staff
Civil Division, Room 7222
U.S. Department of Justice
950 Pennsylvania Avenue NW
Washington, DC 20530
(202) 305-1754*

# TABLE OF CONTENTS

42 U.S.C. § 300gg-111 (excerpts) .................................................... A1

42 U.S.C. § 300gg-112 (excerpts) ................................................. A19

45 C.F.R. § 149.510 (excerpts) ..................................................... A22

45 C.F.R. § 149.520 (excerpts) ..................................................... A32

**42 U.S.C. § 300gg-111 (excerpts)**

**§ 300gg-111.  Preventing surprise medical bills**

**(a) Coverage of emergency services**

**(1) In general**

If a group health plan, or a health insurance issuer offering group or individual health insurance coverage, provides or covers any benefits with respect to services in an emergency department of a hospital or with respect to emergency services in an independent freestanding emergency department (as defined in paragraph (3)(D)), the plan or issuer shall cover emergency services (as defined in paragraph (3)(C))—

(A) without the need for any prior authorization determination;

(B) whether the health care provider furnishing such services is a participating provider or a participating emergency facility, as applicable, with respect to such services;

(C) in a manner so that, if such services are provided to a participant, beneficiary, or enrollee by a nonparticipating provider or a nonparticipating emergency facility—

(i) such services will be provided without imposing any requirement under the plan or coverage for prior authorization of services or any limitation on coverage that is more restrictive than the requirements or limitations that apply to emergency services received from participating providers and participating emergency facilities with respect to such plan or coverage, respectively;

(ii) the cost-sharing requirement is not greater than the requirement that would apply if such services were provided by a participating provider or a participating emergency facility;

(iii) such cost-sharing requirement is calculated as if the total amount that would have been charged for such services by such participating provider or participating emergency facility were equal to the recognized amount (as defined in paragraph (3)(H)) for such services, plan or coverage, and year;

(iv) the group health plan or health insurance issuer, respectively—

(I) not later than 30 calendar days after the bill for such services is transmitted by such provider or facility, sends to the provider or

A1

facility, as applicable, an initial payment or notice of denial of payment; and

(II) pays a total plan or coverage payment directly to such provider or facility, respectively (in accordance, if applicable, with the timing requirement described in subsection (c)(6)) that is, with application of any initial payment under subclause (I), equal to the amount by which the out-of-network rate (as defined in paragraph (3)(K)) for such services exceeds the cost-sharing amount for such services (as determined in accordance with clauses (ii) and (iii)) and year; and

(v) any cost-sharing payments made by the participant, beneficiary, or enrollee with respect to such emergency services so furnished shall be counted toward any in-network deductible or out-of-pocket maximums applied under the plan or coverage, respectively (and such in-network deductible and out-of-pocket maximums shall be applied) in the same manner as if such cost-sharing payments were made with respect to emergency services furnished by a participating provider or a participating emergency facility; and

(D) without regard to any other term or condition of such coverage (other than exclusion or coordination of benefits, or an affiliation or waiting period, permitted under section 300gg-3 of this title, including as incorporated pursuant to section 1185d of title 29 and section 9815 of title 26, and other than applicable cost-sharing).

**(2) Audit process and regulations for qualifying payment amounts**

**(A) Audit process**

**(i) In general**

Not later than October 1, 2021, the Secretary, in consultation with the Secretary of Labor and the Secretary of the Treasury, shall establish through rulemaking a process, in accordance with clause (ii), under which group health plans and health insurance issuers offering group or individual health insurance coverage are audited by the Secretary or applicable State authority to ensure that—

(I) such plans and coverage are in compliance with the requirement of applying a qualifying payment amount under this section; and

A2

(II) such qualifying payment amount so applied satisfies the definition under paragraph (3)(E) with respect to the year involved, including with respect to a group health plan or health insurance issuer described in clause (ii) of such paragraph (3)(E).

### (ii) Audit samples

Under the process established pursuant to clause (i), the Secretary—

(I) shall conduct audits described in such clause, with respect to a year (beginning with 2022), of a sample with respect to such year of claims data from not more than 25 group health plans and health insurance issuers offering group or individual health insurance coverage; and

(II) may audit any group health plan or health insurance issuer offering group or individual health insurance coverage if the Secretary has received any complaint or other information about such plan or coverage, respectively, that involves the compliance of the plan or coverage, respectively, with either of the requirements described in subclauses (I) and (II) of such clause.

### (iii) Reports

Beginning for 2022, the Secretary shall annually submit to Congress a report on the number of plans and issuers with respect to which audits were conducted during such year pursuant to this subparagraph.

### (B) Rulemaking

Not later than July 1, 2021, the Secretary, in consultation with the Secretary of Labor and the Secretary of the Treasury, shall establish through rulemaking—

(i) the methodology the group health plan or health insurance issuer offering group or individual health insurance coverage shall use to determine the qualifying payment amount, differentiating by individual market, large group market, and small group market;

(ii) the information such plan or issuer, respectively, shall share with the nonparticipating provider or nonparticipating facility, as applicable, when making such a determination;

(iii) the geographic regions applied for purposes of this subparagraph, taking into account access to items and services in

rural and underserved areas, including health professional shortage areas, as defined in section 254e of this title; and

(iv) a process to receive complaints of violations of the requirements described in subclauses (I) and (II) of subparagraph (A)(i) by group health plans and health insurance issuers offering group or individual health insurance coverage.

Such rulemaking shall take into account payments that are made by such plan or issuer, respectively, that are not on a fee-for-service basis. Such methodology may account for relevant payment adjustments that take into account quality or facility type (including higher acuity settings and the case-mix of various facility types) that are otherwise taken into account for purposes of determining payment amounts with respect to participating facilities. In carrying out clause (iii), the Secretary shall consult with the National Association of Insurance Commissioners to establish the geographic regions under such clause and shall periodically update such regions, as appropriate, taking into account the findings of the report submitted under section 109(a) of the No Surprises Act.

### (3) Definitions

\*\*\*

### (E) Qualifying payment amount

#### (i) In general

The term "qualifying payment amount" means, subject to clauses (ii) and (iii), with respect to a sponsor of a group health plan and health insurance issuer offering group or individual health insurance coverage—

(I) for an item or service furnished during 2022, the median of the contracted rates recognized by the plan or issuer, respectively (determined with respect to all such plans of such sponsor or all such coverage offered by such issuer that are offered within the same insurance market (specified in subclause (I), (II), (III), or (IV) of clause (iv)) as the plan or coverage) as the total maximum payment (including the cost-sharing amount imposed for such item or service and the amount to be paid by the plan or issuer, respectively) under such plans or coverage, respectively, on

January 31, 2019, for the same or a similar item or service that is provided by a provider in the same or similar specialty and provided in the geographic region in which the item or service is furnished, consistent with the methodology established by the Secretary under paragraph (2)(B), increased by the percentage increase in the consumer price index for all urban consumers (United States city average) over 2019, such percentage increase over 2020, and such percentage increase over 2021; and

(II) for an item or service furnished during 2023 or a subsequent year, the qualifying payment amount determined under this clause for such an item or service furnished in the previous year, increased by the percentage increase in the consumer price index for all urban consumers (United States city average) over such previous year.

**(ii) New plans and coverage**

The term "qualifying payment amount" means, with respect to a sponsor of a group health plan or health insurance issuer offering group or individual health insurance coverage in a geographic region in which such sponsor or issuer, respectively, did not offer any group health plan or health insurance coverage during 2019—

(I) for the first year in which such group health plan, group health insurance coverage, or individual health insurance coverage, respectively, is offered in such region, a rate (determined in accordance with a methodology established by the Secretary) for items and services that are covered by such plan or coverage and furnished during such first year; and

(II) for each subsequent year such group health plan, group health insurance coverage, or individual health insurance coverage, respectively, is offered in such region, the qualifying payment amount determined under this clause for such items and services furnished in the previous year, increased by the percentage increase in the consumer price index for all urban consumers (United States city average) over such previous year.

**(iii) Insufficient information; newly covered items and services**

In the case of a sponsor of a group health plan or health insurance issuer offering group or individual health insurance coverage that does not have sufficient information to calculate the median of the

contracted rates described in clause (i)(I) in 2019 (or, in the case of a newly covered item or service (as defined in clause (v)(III)), in the first coverage year (as defined in clause (v)(I)) for such item or service with respect to such plan or coverage) for an item or service (including with respect to provider type, or amount, of claims for items or services (as determined by the Secretary) provided in a particular geographic region (other than in a case with respect to which clause (ii) applies)) the term "qualifying payment amount"—

(I) for an item or service furnished during 2022 (or, in the case of a newly covered item or service, during the first coverage year for such item or service with respect to such plan or coverage), means such rate for such item or service determined by the sponsor or issuer, respectively, through use of any database that is determined, in accordance with rulemaking described in paragraph (2)(B), to not have any conflicts of interest and to have sufficient information reflecting allowed amounts paid to a health care provider or facility for relevant services furnished in the applicable geographic region (such as a State all-payer claims database);

(II) for an item or service furnished in a subsequent year (before the first sufficient information year (as defined in clause (v)(II)) for such item or service with respect to such plan or coverage), means the rate determined under subclause (I) or this subclause, as applicable, for such item or service for the year previous to such subsequent year, increased by the percentage increase in the consumer price index for all urban consumers (United States city average) over such previous year;

(III) for an item or service furnished in the first sufficient information year for such item or service with respect to such plan or coverage, has the meaning given the term qualifying payment amount in clause (i)(I), except that in applying such clause to such item or service, the reference to "furnished during 2022" shall be treated as a reference to furnished during such first sufficient information year, the reference to "in 2019" shall be treated as a reference to such sufficient information year, and the increase described in such clause shall not be applied; and

(IV) for an item or service furnished in any year subsequent to the first sufficient information year for such item or service with respect to such plan or coverage, has the meaning given such term

in clause (i)(II), except that in applying such clause to such item or service, the reference to "furnished during 2023 or a subsequent year" shall be treated as a reference to furnished during the year after such first sufficient information year or a subsequent year.

**(iv) Insurance market**

For purposes of clause (i)(I), a health insurance market specified in this clause is one of the following:

(I) The individual market.

(II) The large group market (other than plans described in subclause (IV)).

(III) The small group market (other than plans described in subclause (IV)).

(IV) In the case of a self-insured group health plan, other self-insured group health plans.

**(v) Definitions**

For purposes of this subparagraph:

**(I) First coverage year**

The term "first coverage year" means, with respect to a group health plan or group or individual health insurance coverage offered by a health insurance issuer and an item or service for which coverage is not offered in 2019 under such plan or coverage, the first year after 2019 for which coverage for such item or service is offered under such plan or health insurance coverage.

**(II) First sufficient information year**

The term "first sufficient information year" means, with respect to a group health plan or group or individual health insurance coverage offered by a health insurance issuer—

(aa) in the case of an item or service for which the plan or coverage does not have sufficient information to calculate the median of the contracted rates described in clause (i)(I) in 2019, the first year subsequent to 2022 for which the sponsor or issuer has such sufficient information to calculate the median of such contracted rates in the year previous to such first subsequent year; and

A7

(bb) in the case of a newly covered item or service, the first year subsequent to the first coverage year for such item or service with respect to such plan or coverage for which the sponsor or issuer has sufficient information to calculate the median of the contracted rates described in clause (i)(I) in the year previous to such first subsequent year.

**(III) Newly covered item or service**

The term "newly covered item or service" means, with respect to a group health plan or group or individual health insurance issuer offering health insurance coverage, an item or service for which coverage was not offered in 2019 under such plan or coverage, but is offered under such plan or coverage in a year after 2019.

\*\*\*

**(H) Recognized amount**

The term "recognized amount" means, with respect to an item or service furnished by a nonparticipating provider or nonparticipating emergency facility during a year and a group health plan or group or individual health insurance coverage offered by a health insurance issuer—

(i) subject to clause (iii), in the case of such item or service furnished in a State that has in effect a specified State law with respect to such plan, coverage, or issuer, respectively; such a nonparticipating provider or nonparticipating emergency facility; and such an item or service, the amount determined in accordance with such law;

(ii) subject to clause (iii), in the case of such item or service furnished in a State that does not have in effect a specified State law, with respect to such plan, coverage, or issuer, respectively; such a nonparticipating provider or nonparticipating emergency facility; and such an item or service, the amount that is the qualifying payment amount (as defined in subparagraph (E)) for such year and determined in accordance with rulemaking described in paragraph (2)(B)) for such item or service; or

(iii) in the case of such item or service furnished in a State with an All-Payer Model Agreement under section 1115A of the Social Security Act [42 U.S.C. 1315a], the amount that the State approves under such system for such item or service so furnished.

\*\*\*

**(K) Out-of-network rate**

The term "out-of-network rate" means, with respect to an item or service furnished in a State during a year to a participant, beneficiary, or enrollee of a group health plan or group or individual health insurance coverage offered by a health insurance issuer receiving such item or service from a nonparticipating provider or nonparticipating emergency facility—

(i) subject to clause (iii), in the case of such item or service furnished in a State that has in effect a specified State law with respect to such plan, coverage, or issuer, respectively; such a nonparticipating provider or nonparticipating emergency facility; and such an item or service, the amount determined in accordance with such law;

(ii) subject to clause (iii), in the case such State does not have in effect such a law with respect to such item or service, plan, and provider or facility—

(I) subject to subclause (II), if the provider or facility (as applicable) and such plan or coverage agree on an amount of payment (including if such agreed on amount is the initial payment sent by the plan under subsection (a)(1)(C)(iv)(I), subsection (b)(1)(C), or section 300gg-112(a)(3)(A) of this title, as applicable, or is agreed on through open negotiations under subsection (c)(1)) with respect to such item or service, such agreed on amount; or

(II) if such provider or facility (as applicable) and such plan or coverage enter the independent dispute resolution process under subsection (c) and do not so agree before the date on which a certified IDR entity (as defined in paragraph (4) of such subsection) makes a determination with respect to such item or service under such subsection, the amount of such determination; or

(iii) in the case such State has an All-Payer Model Agreement under section 1115A of the Social Security Act [42 U.S.C. 1315a], the amount that the State approves under such system for such item or service so furnished.

**(L) Cost-sharing**

The term "cost-sharing" includes copayments, coinsurance, and deductibles.

## (b) Coverage of non-emergency services performed by nonparticipating providers at certain participating facilities

### (1) In general

In the case of items or services (other than emergency services to which subsection (a) applies) for which any benefits are provided or covered by a group health plan or health insurance issuer offering group or individual health insurance coverage furnished to a participant, beneficiary, or enrollee of such plan or coverage by a nonparticipating provider (as defined in subsection (a)(3)(G)(i)) (and who, with respect to such items and services, has not satisfied the notice and consent criteria of section 300gg-132(d) of this title) with respect to a visit (as defined by the Secretary in accordance with paragraph (2)(B)) at a participating health care facility (as defined in paragraph (2)(A)), with respect to such plan or coverage, respectively, the plan or coverage, respectively—

(A) shall not impose on such participant, beneficiary, or enrollee a cost-sharing requirement for such items and services so furnished that is greater than the cost-sharing requirement that would apply under such plan or coverage, respectively, had such items or services been furnished by a participating provider (as defined in subsection (a)(3)(G)(ii));

(B) shall calculate such cost-sharing requirement as if the total amount that would have been charged for such items and services by such participating provider were equal to the recognized amount (as defined in subsection (a)(3)(H)) for such items and services, plan or coverage, and year;

(C) not later than 30 calendar days after the bill for such services is transmitted by such provider, shall send to the provider an initial payment or notice of denial of payment;

(D) shall pay a total plan or coverage payment directly, in accordance, if applicable, with the timing requirement described in subsection (c)(6), to such provider furnishing such items and services to such participant, beneficiary, or enrollee that is, with application of any initial payment under subparagraph (C), equal to the amount by which the out-of-network rate (as defined in subsection (a)(3)(K)) for such items and

services involved exceeds the cost-sharing amount imposed under the plan or coverage, respectively, for such items and services (as determined in accordance with subparagraphs (A) and (B)) and year; and

(E) shall count toward any in-network deductible and in-network out-of-pocket maximums (as applicable) applied under the plan or coverage, respectively, any cost-sharing payments made by the participant, beneficiary, or enrollee (and such in-network deductible and out-of-pocket maximums shall be applied) with respect to such items and services so furnished in the same manner as if such cost-sharing payments were with respect to items and services furnished by a participating provider.

\*\*\*

**(c) Determination of out-of-network rates to be paid by health plans; independent dispute resolution process**

**(1) Determination through open negotiation**

**(A) In general**

With respect to an item or service furnished in a year by a nonparticipating provider or a nonparticipating facility, with respect to a group health plan or health insurance issuer offering group or individual health insurance coverage, in a State described in subsection (a)(3)(K)(ii) with respect to such plan or coverage and provider or facility, and for which a payment is required to be made by the plan or coverage pursuant to subsection (a)(1) or (b)(1), the provider or facility (as applicable) or plan or coverage may, during the 30-day period beginning on the day the provider or facility receives an initial payment or a notice of denial of payment from the plan or coverage regarding a claim for payment for such item or service, initiate open negotiations under this paragraph between such provider or facility and plan or coverage for purposes of determining, during the open negotiation period, an amount agreed on by such provider or facility, respectively, and such plan or coverage for payment (including any cost-sharing) for such item or service. For purposes of this subsection, the open negotiation period, with respect to an item or service, is the 30-day period beginning on the date of initiation of the negotiations with respect to such item or service.

A11

**(B) Accessing independent dispute resolution process in case of failed negotiations**

In the case of open negotiations pursuant to subparagraph (A), with respect to an item or service, that do not result in a determination of an amount of payment for such item or service by the last day of the open negotiation period described in such subparagraph with respect to such item or service, the provider or facility (as applicable) or group health plan or health insurance issuer offering group or individual health insurance coverage that was party to such negotiations may, during the 4-day period beginning on the day after such open negotiation period, initiate the independent dispute resolution process under paragraph (2) with respect to such item or service. The independent dispute resolution process shall be initiated by a party pursuant to the previous sentence by submission to the other party and to the Secretary of a notification (containing such information as specified by the Secretary) and for purposes of this subsection, the date of initiation of such process shall be the date of such submission or such other date specified by the Secretary pursuant to regulations that is not later than the date of receipt of such notification by both the other party and the Secretary.

**(2) Independent dispute resolution process available in case of failed open negotiations**

**(A) Establishment**

Not later than 1 year after December 27, 2020, the Secretary, jointly with the Secretary of Labor and the Secretary of the Treasury, shall establish by regulation one independent dispute resolution process (referred to in this subsection as the "IDR process") under which, in the case of an item or service with respect to which a provider or facility (as applicable) or group health plan or health insurance issuer offering group or individual health insurance coverage submits a notification under paragraph (1)(B) (in this subsection referred to as a "qualified IDR item or service"), a certified IDR entity under paragraph (4) determines, subject to subparagraph (B) and in accordance with the succeeding provisions of this subsection, the amount of payment under the plan or coverage for such item or service furnished by such provider or facility.

\*\*\*

**(3) Treatment of batching of items and services**

### (A) In general

Under the IDR process, the Secretary shall specify criteria under which multiple qualified IDR dispute items and services are permitted to be considered jointly as part of a single determination by an entity for purposes of encouraging the efficiency (including minimizing costs) of the IDR process. ***

***

## (4) Certification and selection of IDR entities

### (A) In general

The Secretary, in consultation with the Secretary of Labor and Secretary of the Treasury, shall establish a process to certify (including to recertify) entities under this paragraph. ***

***

## (5) Payment determination

### (A) In general

Not later than 30 days after the date of selection of the certified IDR entity with respect to a determination for a qualified IDR item or service, the certified IDR entity shall—

(i) taking into account the considerations specified in subparagraph (C), select one of the offers submitted under subparagraph (B) to be the amount of payment for such item or service determined under this subsection for purposes of subsection (a)(1) or (b)(1), as applicable; and

(ii) notify the provider or facility and the group health plan or health insurance issuer offering group or individual health insurance coverage party to such determination of the offer selected under clause (i).

### (B) Submission of offers

Not later than 10 days after the date of selection of the certified IDR entity with respect to a determination for a qualified IDR item or service, the provider or facility and the group health plan or health insurance issuer offering group or individual health insurance coverage party to such determination—

(i) shall each submit to the certified IDR entity with respect to such determination—

> (I) an offer for a payment amount for such item or service furnished by such provider or facility; and

> (II) such information as requested by the certified IDR entity relating to such offer; and

(ii) may each submit to the certified IDR entity with respect to such determination any information relating to such offer submitted by either party, including information relating to any circumstance described in subparagraph (C)(ii).

**(C) Considerations in determination**

**(i) In general**

In determining which offer is the payment to be applied pursuant to this paragraph, the certified IDR entity, with respect to the determination for a qualified IDR item or service shall consider—

> (I) the qualifying payment amounts (as defined in subsection (a)(3)(E)) for the applicable year for items or services that are comparable to the qualified IDR item or service and that are furnished in the same geographic region (as defined by the Secretary for purposes of such subsection) as such qualified IDR item or service; and

> (II) subject to subparagraph (D), information on any circumstance described in clause (ii), such information as requested in subparagraph (B)(i)(II), and any additional information provided in subparagraph (B)(ii).

**(ii) Additional circumstances**

For purposes of clause (i)(II), the circumstances described in this clause are, with respect to a qualified IDR item or service of a nonparticipating provider, nonparticipating emergency facility, group health plan, or health insurance issuer of group or individual health insurance coverage the following:

> (I) The level of training, experience, and quality and outcomes measurements of the provider or facility that furnished such item or service (such as those endorsed by the consensus-based

entity authorized in section 1890 of the Social Security Act [42 U.S.C. 1395aaa]).

(II) The market share held by the nonparticipating provider or facility or that of the plan or issuer in the geographic region in which the item or service was provided.

(III) The acuity of the individual receiving such item or service or the complexity of furnishing such item or service to such individual.

(IV) The teaching status, case mix, and scope of services of the nonparticipating facility that furnished such item or service.

(V) Demonstrations of good faith efforts (or lack of good faith efforts) made by the nonparticipating provider or nonparticipating facility or the plan or issuer to enter into network agreements and, if applicable, contracted rates between the provider or facility, as applicable, and the plan or issuer, as applicable, during the previous 4 plan years.

**(D) Prohibition on consideration of certain factors**

In determining which offer is the payment to be applied with respect to qualified IDR items and services furnished by a provider or facility, the certified IDR entity with respect to a determination shall not consider usual and customary charges, the amount that would have been billed by such provider or facility with respect to such items and services had the provisions of section 300gg-131 or 300gg-132 of this title (as applicable) not applied, or the payment or reimbursement rate for such items and services furnished by such provider or facility payable by a public payor, including under the Medicare program under title XVIII of the Social Security Act [42 U.S.C. 1395 et seq.], under the Medicaid program under title XIX of such Act [42 U.S.C. 1396 et seq.], under the Children's Health Insurance Program under title XXI of such Act [42 U.S.C. 1397aa et seq.], under the TRICARE program under chapter 55 of title 10, or under chapter 17 of title 38.

**(E) Effects of determination**

    **(i) In general**

A determination of a certified IDR entity under subparagraph (A)—

(I) shall be binding upon the parties involved, in the absence of a fraudulent claim or evidence of misrepresentation of facts presented to the IDR entity involved regarding such claim; and

(II) shall not be subject to judicial review, except in a case described in any of paragraphs (1) through (4) of section 10(a) of title 9.

\*\*\*

### (7) Publication of information relating to the IDR process

#### (A) Publication of information

For each calendar quarter in 2022 and each calendar quarter in a subsequent year, the Secretary shall make available on the public website of the Department of Health and Human Services—

(i) the number of notifications submitted under paragraph (1)(B) during such calendar quarter;

(ii) the size of the provider practices and the size of the facilities submitting notifications under paragraph (1)(B) during such calendar quarter;

(iii) the number of such notifications with respect to which a determination was made under paragraph (5)(A);

(iv) the information described in subparagraph (B) with respect to each notification with respect to which such a determination was so made;

(v) the number of times the payment amount determined (or agreed to) under this subsection exceeds the qualifying payment amount, specified by items and services;

(vi) the amount of expenditures made by the Secretary during such calendar quarter to carry out the IDR process;

(vii) the total amount of fees paid under paragraph (8) during such calendar quarter; and

(viii) the total amount of compensation paid to certified IDR entities under paragraph (5)(F) during such calendar quarter.

#### (B) Information

For purposes of subparagraph (A), the information described in this subparagraph is, with respect to a notification under paragraph (1)(B) by a nonparticipating provider, nonparticipating emergency facility, group health plan, or health insurance issuer offering group or individual health insurance coverage—

(i) a description of each item and service included with respect to such notification;

(ii) the geography in which the items and services with respect to such notification were provided;

(iii) the amount of the offer submitted under paragraph (5)(B) by the group health plan or health insurance issuer (as applicable) and by the nonparticipating provider or nonparticipating emergency facility (as applicable) expressed as a percentage of the qualifying payment amount;

(iv) whether the offer selected by the certified IDR entity under paragraph (5) to be the payment applied was the offer submitted by such plan or issuer (as applicable) or by such provider or facility (as applicable) and the amount of such offer so selected expressed as a percentage of the qualifying payment amount;

(v) the category and practice specialty of each such provider or facility involved in furnishing such items and services;

(vi) the identity of the health plan or health insurance issuer, provider, or facility, with respect to the notification;

(vii) the length of time in making each determination;

(viii) the compensation paid to the certified IDR entity with respect to the settlement or determination; and

(ix) any other information specified by the Secretary.

**(C) IDR entity requirements**

For 2022 and each subsequent year, an IDR entity, as a condition of certification as an IDR entity, shall submit to the Secretary such information as the Secretary determines necessary to carry out the provisions of this subsection.

**(D) Clarification**

The Secretary shall ensure the public reporting under this paragraph does not contain information that would disclose privileged or confidential information of a group health plan or health insurance issuer offering group or individual health insurance coverage or of a provider or facility.

***

**42 U.S.C. § 300gg-112 (excerpts)**

**§ 300gg-111.  Ending surprise air ambulance bills**

**(a) In general**

In the case of a participant, beneficiary, or enrollee who is in a group health plan or group or individual health insurance coverage offered by a health insurance issuer and who receives air ambulance services from a nonparticipating provider (as defined in section 300gg-111(a)(3)(G) of this title) with respect to such plan or coverage, if such services would be covered if provided by a participating provider (as defined in such section) with respect to such plan or coverage—

(1) the cost-sharing requirement with respect to such services shall be the same requirement that would apply if such services were provided by such a participating provider, and any coinsurance or deductible shall be based on rates that would apply for such services if they were furnished by such a participating provider;

(2) such cost-sharing amounts shall be counted towards the in-network deductible and in-network out-of-pocket maximum amount under the plan or coverage for the plan year (and such in-network deductible shall be applied) with respect to such items and services so furnished in the same manner as if such cost-sharing payments were with respect to items and services furnished by a participating provider; and

(3) the group health plan or health insurance issuer, respectively, shall—

(A) not later than 30 calendar days after the bill for such services is transmitted by such provider, send to the provider, an initial payment or notice of denial of payment; and

(B) pay a total plan or coverage payment, in accordance with, if applicable, subsection (b)(6), directly to such provider furnishing such services to such participant, beneficiary, or enrollee that is, with application of any initial payment under subparagraph (A), equal to the amount by which the out-of-network rate (as defined in section 300gg-111(a)(3)(K) of this title) for such services and year involved exceeds the cost-sharing amount imposed under the plan or coverage, respectively, for such services (as determined in accordance with paragraphs (1) and (2)).

**(b) Determination of out-of-network rates to be paid by health plans; independent dispute resolution process**

\*\*\*

**(5) Payment determination**

\*\*\*

**(C) Considerations in determination**

**(i) In general**

In determining which offer is the payment to be applied pursuant to this paragraph, the certified IDR entity, with respect to the determination for a qualified IDR air ambulance service shall consider—

(I) the qualifying payment amounts (as defined in section 300gg-111(a)(3)(E) of this title) for the applicable year for items or services that are comparable to the qualified IDR air ambulance service and that are furnished in the same geographic region (as defined by the Secretary for purposes of such subsection) as such qualified IDR air ambulance service; and

(II) subject to clause (iii), information on any circumstance described in clause (ii), such information as requested in subparagraph (B)(i)(II), and any additional information provided in subparagraph (B)(ii).

**(ii) Additional circumstances**

For purposes of clause (i)(II), the circumstances described in this clause are, with respect to air ambulance services included in the notification submitted under paragraph (1)(B) of a nonparticipating provider, group health plan, or health insurance issuer the following:

(I) The quality and outcomes measurements of the provider that furnished such services.

(II) The acuity of the individual receiving such services or the complexity of furnishing such services to such individual.

(III) The training, experience, and quality of the medical personnel that furnished such services.

(IV) Ambulance vehicle type, including the clinical capability level of such vehicle.

(V) Population density of the pick up location (such as urban, suburban, rural, or frontier).

(VI) Demonstrations of good faith efforts (or lack of good faith efforts) made by the nonparticipating provider or nonparticipating facility or the plan or issuer to enter into network agreements and, if applicable, contracted rates between the provider and the plan or issuer, as applicable, during the previous 4 plan years.

### (iii) Prohibition on consideration of certain factors

In determining which offer is the payment amount to be applied with respect to qualified IDR air ambulance services furnished by a provider, the certified IDR entity with respect to such determination shall not consider usual and customary charges, the amount that would have been billed by such provider with respect to such services had the provisions of section 300gg-135 of this title not applied, or the payment or reimbursement rate for such services furnished by such provider payable by a public payor, including under the Medicare program under title XVIII of the Social Security Act [42 U.S.C. 1395 et seq.], under the Medicaid program under title XIX of such Act [42 U.S.C. 1396 et seq.], under the Children's Health Insurance Program under title XXI of such Act [42 U.S.C. 1397aa et seq.], under the TRICARE program under chapter 55 of title 10, or under chapter 17 of title 38.

### (D) Effects of determination

The provisions of section 300gg-111(c)(5)(E) of this title shall apply with respect to a determination of a certified IDR entity under subparagraph (A), the notification submitted with respect to such determination, the services with respect to such notification, and the parties to such notification in the same manner as such provisions apply with respect to a determination of a certified IDR entity under section 300gg-111(c)(5)(E) of this title, the notification submitted with respect to such determination, the items and services with respect to such notification, and the parties to such notification.

**45 C.F.R. § 149.510 (excerpts)**

**§ 149.510 Independent dispute resolution process.**

\*\*\*

**(c) Federal IDR process following initiation—**

   \*\*\*

   **(4) Payment determination for a qualified IDR item or service—**

     **(i) Submission of offers.** Not later than 10 business days after the selection of the certified IDR entity, the plan or issuer and the provider, facility, or provider of air ambulance services:

      (A) Must each submit to the certified IDR entity:

       (1) An offer of an out-of-network rate expressed as both a dollar amount and the corresponding percentage of the qualifying payment amount represented by that dollar amount;

       (2) Information requested by the certified IDR entity relating to the offer.

       (3) The following additional information, as applicable—

        (i) For providers and facilities, information on the size of the provider's practice or of the facility (if applicable). Specifically, a group of providers must specify whether the providers' practice has fewer than 20 employees, 20 to 50 employees, 51 to 100 employees, 101 to 500 employees, or more than 500 employees. For facilities, the facility must specify whether the facility has 50 or fewer employees, 51 to 100 employees, 101 to 500 employees, or more than 500 employees;

        (ii) For providers and facilities, information on the practice specialty or type, respectively (if applicable);

        (iii) For plans and issuers, information on the coverage area of the plan or issuer, the relevant geographic region for purposes of the qualifying payment amount, whether the coverage is fully-insured or partially or fully self-insured (or a FEHB carrier if the item or service relates to FEHB plans); and

(iv) The qualifying payment amount for the applicable year for the same or similar item or service as the qualified IDR item or service.

(B) May each submit to the certified IDR entity any information relating to the offer that was submitted by either party, except that the information may not include information on factors described in paragraph (c)(4)(v) of this section.

**(ii) Payment determination and notification.** Not later than 30 business days after the selection of the certified IDR entity, the certified IDR entity must:

(A) Select as the out-of-network rate for the qualified IDR item or service one of the offers submitted under paragraph (c)(4)(i) of this section, weighing only the considerations specified in paragraph (c)(4)(iii) of this section (as applied to the information provided by the parties pursuant to paragraph (c)(4)(i) of this section). The certified IDR entity must select the offer that the certified IDR entity determines best represents the value of the qualified IDR item or service as the out-of-network rate.

(B) Notify the plan or issuer and the provider or facility, as applicable, of the selection of the offer under paragraph (c)(4)(ii)(A) of this section, and provide the written decision required under (c)(4)(vi) of this section.

**(iii) Considerations in determination.** In determining which offer to select:

(A) The certified IDR entity must consider the qualifying payment amount(s) for the applicable year for the same or similar item or service.

(B) The certified IDR entity must then consider information submitted by a party that relates to the following circumstances:

(1) The level of training, experience, and quality and outcomes measurements of the provider or facility that furnished the qualified IDR item or service (such as those endorsed by the consensus-based entity authorized in section 1890 of the Social Security Act).

(2) The market share held by the provider or facility or that of the plan or issuer in the geographic region in which the qualified IDR item or service was provided.

(3) The acuity of the participant, beneficiary, or enrollee receiving the qualified IDR item or service, or the complexity of furnishing the qualified IDR item or service to the participant, beneficiary, or enrollee.

(4) The teaching status, case mix, and scope of services of the facility that furnished the qualified IDR item or service, if applicable.

(5) Demonstration of good faith efforts (or lack thereof) made by the provider or facility or the plan or issuer to enter into network agreements with each other, and, if applicable, contracted rates between the provider or facility, as applicable, and the plan or issuer, as applicable, during the previous 4 plan years.

(C) The certified IDR entity must also consider information provided by a party in response to a request by the certified IDR entity under paragraph (c)(4)(i)(A)(2) of this section that relates to the offer for the payment amount for the qualified IDR item or service that is the subject of the payment determination and that does not include information on factors described in paragraph (c)(4)(v) of this section.

(D) The certified IDR entity must also consider additional information submitted by a party that relates to the offer for the payment amount for the qualified IDR item or service that is the subject of the payment determination and that does not include information on factors described in paragraph (c)(4)(v) of this section.

(E) In weighing the considerations described in paragraphs (c)(4)(iii)(B) through (D) of this section, the certified IDR entity should evaluate whether the information is credible and relates to the offer submitted by either party for the payment amount for the qualified IDR item or service that is the subject of the payment determination. The certified IDR entity should not give weight to information to the extent it is not credible, it does not relate to either party's offer for the payment amount for the qualified IDR item or service, or it is already accounted for by the qualifying

payment amount under paragraph (c)(4)(iii)(A) of this section or other credible information under paragraphs (c)(4)(iii)(B) through (D) of this section.

**(iv) Examples.** The rules of paragraph (c)(4)(iii) of this section are illustrated in the following paragraphs. Each example assumes that the Federal IDR process applies for purposes of determining the out-of-network rate, that both parties have submitted the information parties are required to submit as part of the Federal IDR process, and that the submitted information does not include information on factors described in paragraph (c)(4)(v) of this section:

**(A) Example 1—**

**(1) Facts.** A level 1 trauma center that is a nonparticipating emergency facility and an issuer are parties to a payment determination in the Federal IDR process. The facility submits an offer that is higher than the qualifying payment amount. The facility also submits additional written information showing that the scope of services available at the facility was critical to the delivery of care for the qualified IDR item or service provided, given the particular patient's acuity. This information is determined to be credible by the certified IDR entity. Further, the facility submits additional information showing the contracted rates used to calculate the qualifying payment amount for the qualified IDR item or service were based on a level of service that is typical in cases in which the services are delivered by a facility that is not a level 1 trauma center and that does not have the capability to provide the scope of services provided by a level 1 trauma center. This information is also determined to be credible by the certified IDR entity. The issuer submits an offer equal to the qualifying payment amount. No additional information is submitted by either party. The certified IDR entity determines that all the information submitted by the nonparticipating emergency facility relates to the offer for the payment amount for the qualified IDR item or service that is the subject of the payment determination.

**(2) Conclusion.** In this paragraph (c)(4)(iv)(A) (Example 1), the certified IDR entity must consider the qualifying payment amount. The certified IDR entity then must consider the additional information submitted by the nonparticipating

emergency facility, provided the information relates to circumstances described in paragraphs (c)(4)(iii)(B) through (D) of this section and relates to the offer for the payment amount for the qualified IDR item or service that is the subject of the payment determination. If the certified IDR entity determines that it is appropriate to give weight to the additional credible information submitted by the nonparticipating emergency facility and that the additional credible information submitted by the facility demonstrates that the facility's offer best represents the value of the qualified IDR item or service, the certified IDR entity should select the facility's offer.

**(B) Example 2—**

**(1) Facts.** A nonparticipating provider and an issuer are parties to a payment determination in the Federal IDR process. The provider submits an offer that is higher than the qualifying payment amount. The provider also submits additional written information regarding the level of training and experience the provider possesses. This information is determined to be credible by the certified IDR entity, but the certified IDR entity finds that the information does not demonstrate that the provider's level of training and experience relates to the offer for the payment amount for the qualified IDR item or service that is the subject of the payment determination (for example, the information does not show that the provider's level of training and experience was necessary for providing the qualified IDR service that is the subject of the payment determination to the particular patient, or that the training or experience made an impact on the care that was provided). The nonparticipating provider does not submit any additional information. The issuer submits an offer equal to the qualifying payment amount, with no additional information.

**(2) Conclusion.** In this paragraph (c)(4)(iv)(B) (Example 2), the certified IDR entity must consider the qualifying payment amount. The certified IDR entity must then consider the additional information submitted by the nonparticipating provider, provided the information relates to circumstances described in paragraphs (c)(4)(iii)(B) through (D) of this section and relates to the offer for the payment amount for the qualified

IDR item or service that is the subject of the payment determination. In addition, the certified IDR entity should not give weight to information to the extent it is already accounted for by the qualifying payment amount or other credible information under paragraphs (c)(4)(iii)(B) through (D) of this section. If the certified IDR entity determines that the additional information submitted by the provider is credible but does not relate to the offer for the payment amount for the qualified IDR service that is the subject of the payment determination, and determines that the issuer's offer best represents the value of the qualified IDR service, in the absence of any other credible information that relates to either party's offer, the certified IDR entity should select the issuer's offer.

**(C) Example 3**—

**(1) Facts.** A nonparticipating provider and an issuer are parties to a payment determination in the Federal IDR process involving an emergency department visit for the evaluation and management of a patient. The provider submits an offer that is higher than the qualifying payment amount. The provider also submits additional written information showing that the acuity of the patient's condition and complexity of the qualified IDR service furnished required the taking of a comprehensive history, a comprehensive examination, and medical decision making of high complexity. This information is determined to be credible by the certified IDR entity. The issuer submits an offer equal to the qualifying payment amount for CPT code 99285, which is the CPT code for an emergency department visit for the evaluation and management of a patient requiring a comprehensive history, a comprehensive examination, and medical decision making of high complexity. The issuer also submits additional written information showing that this CPT code accounts for the acuity of the patient's condition. This information is determined to be credible by the certified IDR entity. The certified IDR entity determines that the information provided by the provider and issuer relates to the offer for the payment amount for the qualified IDR service that is the subject of the payment determination. Neither party submits any additional information.

A27

**(2) Conclusion.** In this paragraph (c)(4)(iv)(C) (Example 3), the certified IDR entity must consider the qualifying payment amount. The certified IDR entity then must consider the additional information submitted by the parties, but the certified IDR entity should not give weight to information to the extent it is already accounted for by the qualifying payment amount or other credible information under paragraphs (c)(4)(iii)(B) through (D) of this section. If the certified IDR entity determines the additional information on the acuity of the patient and complexity of the service is already accounted for in the calculation of the qualifying payment amount, the certified IDR entity should not give weight to the additional information provided by the provider. If the certified IDR entity determines that the issuer's offer best represents the value of the qualified IDR service, the certified IDR entity should select the issuer's offer.

**(D) Example 4**—

**(1) Facts.** A nonparticipating emergency facility and an issuer are parties to a payment determination in the Federal IDR process. Although the facility is not participating in the issuer's network during the relevant plan year, it was a participating facility in the issuer's network in the previous 4 plan years. The issuer submits an offer that is higher than the qualifying payment amount and that is equal to the facility's contracted rate (adjusted for inflation) for the previous year with the issuer for the qualified IDR service. The issuer also submits additional written information showing that the contracted rates between the facility and the issuer during the previous 4 plan years were higher than the qualifying payment amount submitted by the issuer, and that these prior contracted rates account for the case mix and scope of services typically furnished at the nonparticipating facility. The certified IDR entity determines this information is credible and that it relates to the offer submitted by the issuer for the payment amount for the qualified IDR service that is the subject of the payment determination. The facility submits an offer that is higher than both the qualifying payment amount and the contracted rate (adjusted for inflation) for the previous year with the issuer for the qualified IDR service. The facility also submits additional written

A28

information, with the intent to show that the case mix and scope of services available at the facility were integral to the service provided. The certified IDR entity determines this information is credible and that it relates to the offer submitted by the facility for the payment amount for the qualified IDR service that is the subject of the payment determination. Neither party submits any additional information.

**(2) Conclusion.** In this paragraph (c)(4)(iv)(D) (Example 4), the certified IDR entity must consider the qualifying payment amount. The certified IDR entity then must consider the additional information submitted by the parties, but should not give weight to information to the extent it is already accounted for by the qualifying payment amount or other credible information under paragraphs (c)(4)(iii)(B) through (D) of this section. If the certified IDR entity determines that the information submitted by the facility regarding the case mix and scope of services available at the facility includes information that is also accounted for in the information the issuer submitted regarding prior contracted rates, then the certified IDR entity should give weight to that information only once. The certified IDR entity also should not give weight to the same information provided by the nonparticipating emergency facility in relation to any other factor. If the certified IDR entity determines that the issuer's offer best represents the value of the qualified IDR service, the certified IDR entity should select the issuer's offer.

**(E) Example 5—**

**(1) Facts.** A nonparticipating provider and an issuer are parties to a payment determination in the Federal IDR process regarding a qualified IDR service for which the issuer downcoded the service code that the provider billed. The issuer submits an offer equal to the qualifying payment amount (which was calculated using the downcoded service code). The issuer also submits additional written information that includes the documentation disclosed to the nonparticipating provider under § 149.140(d)(1)(ii) at the time of the initial payment (which describes why the service code was downcoded). The certified IDR entity determines this information is credible and that it relates to the offer for the payment amount for the qualified IDR

service that is the subject of the payment determination. The provider submits an offer equal to the amount that would have been the qualifying payment amount had the service code not been downcoded. The provider also submits additional written information that includes the documentation disclosed to the nonparticipating provider under § 149.140(d)(1)(ii) at the time of the initial payment. Further, the provider submits additional written information that explains why the billed service code was more appropriate than the downcoded service code, as evidence that the provider's offer, which is equal to the amount the qualifying payment amount would have been for the service code that the provider billed, best represents the value of the service furnished, given its complexity. The certified IDR entity determines this information to be credible and that it relates to the offer for the payment amount for the qualified IDR service that is the subject of the payment determination. Neither party submits any additional information.

**(2) Conclusion.** In this paragraph (c)(4)(iv)(E) (Example 5), the certified IDR entity must consider the qualifying payment amount, which is based on the downcoded service code. The certified IDR entity then must consider whether to give weight to additional information submitted by the parties. If the certified IDR entity determines that the additional credible information submitted by the provider demonstrates that the nonparticipating provider's offer, which is equal to the qualifying payment amount for the service code that the provider billed, best represents the value of the qualified IDR service, the certified IDR entity should select the nonparticipating provider's offer.

**(v) Prohibition on consideration of certain factors.** In determining which offer to select, the certified IDR entity must not consider:

(A) Usual and customary charges (including payment or reimbursement rates expressed as a proportion of usual and customary charges);

(B) The amount that would have been billed by the provider or facility with respect to the qualified IDR item or service had the provisions of 45 CFR 149.410 and 149.420 (as applicable) not applied; or

(C) The payment or reimbursement rate for items and services furnished by the provider or facility payable by a public payor, including under the Medicare program under title XVIII of the Social Security Act; the Medicaid program under title XIX of the Social Security Act; the Children's Health Insurance Program under title XXI of the Social Security Act; the TRICARE program under chapter 55 of title 10, United States Code; chapter 17 of title 38, United States Code; or demonstration projects under section 1115 of the Social Security Act.

**(vi) Written decision.**

(A) The certified IDR entity must explain its determination in a written decision submitted to the parties and the Secretary, in a form and manner specified by the Secretary;

(B) The certified IDR entity's written decision must include an explanation of their determination, including what information the certified IDR entity determined demonstrated that the offer selected as the out-of-network rate is the offer that best represents the value of the qualified IDR item or service, including the weight given to the qualifying payment amount and any additional credible information under paragraphs (c)(4)(iii)(B) through (D) of this section. If the certified IDR entity relies on information described under paragraphs (c)(4)(iii)(B) through (D) of this section in selecting an offer, the written decision must include an explanation of why the certified IDR entity concluded that this information was not already reflected in the qualifying payment amount.

\*\*\*

**45 C.F.R. § 149.520 (excerpts)**

**§ 149.510 Independent dispute resolution process for air ambulance services.**

\*\*\*

**(b) Determination of out-of-network rates to be paid by health plans and health insurance issuers; independent dispute resolution process—**

   **(1) In general.** Except as provided in paragraphs (b)(2) and (3) of this section, in determining the out-of-network rate to be paid by group health plans and health insurance issuers offering group or individual health insurance coverage for out-of-network air ambulance services, plans and issuers must comply with the requirements of § 149.510, except that references in § 149.510 to the additional circumstances in § 149.510(c)(4)(iii)(B) shall be understood to refer to paragraph (b)(2) of this section.

   **(2) Considerations for air ambulance services.** In determining which offer to select, in addition to considering the applicable qualifying payment amount(s), the certified IDR entity must consider information submitted by a party that relates to the following circumstances:

     (i) The quality and outcomes measurements of the provider that furnished the services.

     (ii) The acuity of the condition of the participant, beneficiary, or enrollee receiving the service, or the complexity of furnishing the service to the participant, beneficiary, or enrollee.

     (iii) The training, experience, and quality of the medical personnel that furnished the air ambulance services.

     (iv) Ambulance vehicle type, including the clinical capability level of the vehicle.

     (v) Population density of the point of pick-up (as defined in 42 CFR 414.605) for the air ambulance (such as urban, suburban, rural, or frontier).

     (vi) Demonstrations of good faith efforts (or lack thereof) made by the nonparticipating provider of air ambulance services or the plan or issuer to enter into network agreements with each other and, if applicable, contracted rates between the provider of air ambulance services and the plan or issuer, as applicable, during the previous 4 plan years.

**(3) Weighing considerations.** In weighing the considerations described in paragraph (b)(2) of this section, the certified IDR entity should evaluate whether the information is credible and relates to the offer submitted by either party for the payment amount for the qualified IDR service that is the subject of the payment determination. The certified IDR entity should not give weight to information to the extent it is not credible, it does not relate to either party's offer for the payment amount for the qualified IDR service, or it is already accounted for by the qualifying payment amount under § 149.510(c)(4)(iii)(A) or other credible information under § 149.510(c)(4)(iii)(B) through (D), except that the additional circumstances in § 149.510(c)(4)(iii)(B) shall be understood to refer to paragraph (b)(2) of this section.

\*\*\*