# United States Court of Appeals

*for the*

# Fifth Circuit

---

Case No. 23-40217

TEXAS MEDICAL ASSOCIATION; TYLER REGIONAL HOSPITAL, L.L.C.;
DOCTOR ADAM CORLEY,

*Plaintiffs-Appellees,*

– v. –

UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES;
DEPARTMENT OF LABOR; DEPARTMENT OF THE TREASURY; XAVIER
BECERRA, Secretary, U.S. Department of Health and Human Services; JULIE
A. SU, Acting Secretary, U.S. Department of Labor; JANET YELLEN, Secretary,
U.S. Department of Treasury,

*Defendants-Appellants.*

---

*(For Continuation of Caption See Inside Cover)*

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF TEXAS, CASE NO. 6:22-CV-372
HONORABLE JEREMY DANIEL KERNODLE, U.S. DISTRICT JUDGE

## BRIEF OF PLAINTIFFS-APPELLEES
## LIFENET, INC. AND EAST TEXAS AIR ONE, LLC

STEVEN M. SHEPARD
*Counsel of Record*
STEPHEN SHACKELFORD, JR.
JAMES CRAIG SMYSER
MAX ISAAC STRAUS
SUSMAN GODFREY LLP
1301 Ave. of the Americas, Fl. 32
New York, NY 10019
Tel: (212) 336-8340
Fax: (212) 336-8340
sshepard@susmangodfrey.com

*Counsel for Plaintiffs-Appellees
LifeNet, Inc. and East Texas Air
One, LLC*

LIFENET, INCORPORATED; EAST TEXAS AIR ONE, L.L.C.,

*Plaintiffs-Appellees,*

– v. –

UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES;
XAVIER BECERRA, Secretary, U.S. Department of Health and Human Services;
UNITED STATES DEPARTMENT OF THE TREASURY; JANET YELLEN,
Secretary, U.S. Department of Treasury; UNITED STATES DEPARTMENT OF
LABOR; JULIE A. SU, Acting Secretary, U.S. Department of Labor; UNITED
STATES OFFICE OF PERSONNEL MANAGEMENT; KIRAN AHUJA,

*Defendants-Appellants.*

## <u>CERTIFICATE OF INTERESTED PERSONS</u>

Number and Style of Case: 23-40217, *Texas Medical Association, et al. v. United States Dep't of Health and Human Services*; *LifeNet, Inc. and East Texas Air One, LLC v. United States Dep't of Health and Human Services et al.*

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

Undersigned counsel respectfully incorporates, here, the list of interested persons and entities provided in the principal brief of the Texas Medical Association.

In addition, undersigned counsel also provides the following list:

\* All providers of emergency healthcare medical services in the United States. These providers benefit from the District Court's ruling under review.

\* All group health plans and individual health insurance plans in the United States. These entities benefited from the agencies' regulations which the District Court vacated.

**Federal Rule of Appellate Procedure 26.1:**

1. LifeNet, Inc. has no parent corporation, subsidiaries, and/or affiliates, and no publicly held corporation owns 10% or more of its stock.

2. East Texas Air One, LLC hereby certifies that East Texas Air One, LLC is wholly-owned by AHS East Texas Health System, LLC.  No publicly held corporation owns more than 10% of East Texas Air One, LLC.

Dated: September 11, 2023

*/s/ Steven Shepard*
Steven Shepard
***Counsel of Record for Plaintiffs-Appellees LifeNet, Inc. and East Texas Air One, LLC***

## <u>REQUEST FOR ORAL ARGUMENT</u>

Plaintiffs respectfully request oral argument. This case presents important questions regarding the proper interpretation of the No Surprises Act, a statute that no federal court of appeals has yet construed. The issues involved will benefit from airing at oral argument, during which counsel can address any questions the Court might have. Because the decisional process will be significantly aided by oral argument, it is appropriate here under Fed. R. App. P. 34(a)(2).

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PERSONS ............................................. i

REQUEST FOR ORAL ARGUMENT ........................................................ iii

TABLE OF AUTHORITIES ..................................................................... v

INTRODUCTION ................................................................................... 1

STATEMENT OF ISSUES ...................................................................... 2

STATEMENT OF THE CASE ................................................................. 2

    A.   The Air Ambulance Plaintiffs ......................................... 2

    B.   The No Surprises Act and Air Ambulances ................... 3

    C.   The Final Rule, Enacting the New QPA Presumption, Also Affects Air Ambulance Providers ...................................................................... 7

    D.   The Decision Below ........................................................ 12

STANDARD OF REVIEW ...................................................................... 15

SUMMARY OF ARGUMENT ................................................................. 15

ARGUMENT ......................................................................................... 16

    A.   The Air Ambulance Plaintiffs Have Standing ............. 16

    B.   The Final Rule Violates the NSA and Vacatur Should Be Upheld. ....................................................... 25

CONCLUSION ...................................................................................... 27

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Clinton v. City of New York*,
    524 U.S. 417 (1998)........................................................................21, 22

*Contender Farms, L.L.P. v. U.S. Dep't of Agric.*,
    779 F.3d 258 (5th Cir. 2015)........................................................17, 18

*Cranor v. 5 Star Nutrition, L.L.C.*,
    998 F.3d 686 (5th Cir. 2021)................................................................22

*Duarte ex rel. Duarte v. City of Lewisville*,
    759 F.3d 514 (5th Cir. 2014)................................................................17

*JTB Tools & Oilfield Servs., L.L.C. v. United States*,
    831 F.3d 597 (5th Cir. 2016)................................................................24

*LifeNet, Inc. v. United States Dep't of Health and Hum.*
    *Servs.*,
    617 F. Supp. 3d 547 (E. D. Tex. 2022)..................................................8

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992)..........................................................20, 23, 24

*McAllen Grace Brethren Church v. Salazar*,
    764 F.3d 465 (5th Cir. 2014)................................................................25

*Meland v. Weber*,
    2 F.4th 838 (9th Cir. 2021) ................................................................17

*Owner-Operator Indep. Drivers Ass'n, Inc. v. Fed. Motor*
    *Carrier Safety Admin.*,
    656 F.3d 580 (7th Cir. 2011)................................................................17

*Susan B. Anthony List v. Driehaus*,
    573 U.S. 149 (2014) ............................................................................21

*Texas Ass'n of Mfrs. v. U.S. Consumer Prod. Safety Comm'n,*
  989 F.3d 368 (5th Cir. 2021) ........................................... 19, 21

*Texas Democratic Party v. Benkiser,*
  459 F.3d 582 (5th Cir. 2006) ............................................... 19

*Texas Med. Ass'n. v. United States Dep't of Health and Hum.*
  *Servs.,*
  587 F. Supp. 3d 528 (E. D. Tex. 2022) .................................. 8

*Texas v. EEOC,*
  933 F.3d 433 (5th Cir. 2019) ............................................... 23

*Texas v. United States (DAPA),*
  809 F.3d 134 (5th Cir. 2015) ........................................ 23, 24

## Statutes

26 U.S.C. § 9816(c) ............................................................. 3

29 U.S.C. § 1185e(c) ............................................................ 3

42 U.S.C. § 300gg-111 .................................................... 3, 26

42 U.S.C. § 300gg-111(a)(3)(E) .......................................... 7

42 U.S.C. § 300gg-111(a)(3)(G)(i) ..................................... 18

42 U.S.C. § 300gg-111(c)(1)(B) .......................................... 7

42 U.S.C. § 300gg-111(c)(2)(A) .......................................... 7

42 U.S.C. § 300gg-111(c)(4)(A)–(E) ..................................... 7

42 U.S.C. §§ 300gg-111(c)(5)(A)(i), (C)(i) ............................ 3

42 U.S.C. § 300gg-111(c)(5)(B)(i)(II) .................................. 6

42 U.S.C. § 300gg-111(c)(5)(B)(ii) ...................................... 6

42 U.S.C. § 300gg-111(c)(5)(C)(i)(I) .................................... 6

42 U.S.C. § 300gg-111(c)(5)(C)(ii)(I) ................................... 6

42 U.S.C. § 300gg-111(c)(5)(C)(ii)(II) ............................................. 6

42 U.S.C. § 300gg-111(c)(5)(C)(ii)(III) ........................................... 6

42 U.S.C. § 300gg-111(c)(5)(C)(ii)(IV) ........................................... 6

42 U.S.C. § 300gg-111(c)(5)(C)(ii)(V) ............................................ 6

42 U.S.C. § 300gg-111(c)(5)(D) ...................................................... 7

42 U.S.C. § 300gg-111(c)(5)(E)(i) .................................................... 7

42 U.S.C. §§ 300gg-111(c)(7)(A)(v), (B)(iv) ................................... 7

42 U.S.C. § 300gg-112 ............................................................... 3, 6

42 U.S.C. § 300gg-112(a)(3)(A) ...................................................... 18

42 U.S.C. § 300gg-112(b) ............................................................... 23

42 U.S.C. § 300gg-112(b)(1)(B) ...................................................... 7

42 U.S.C. § 300gg-112(b)(2)(A) ...................................................... 7

42 U.S.C. § 300gg-112(b)(4)(A) ...................................................... 7

42 U.S.C. §§ 300gg-112(b)(5)(A)(i), (C)(i) ...................................... 4

42 U.S.C. § 300gg-112(b)(5)(B)(i)(II) .............................................. 6

42 U.S.C. § 300gg-112(b)(5)(B)(ii) .................................................. 6

42 U.S.C. § 300gg-112(b)(5)(C)(i)(I) ............................................... 6

42 U.S.C. § 300gg-112(b)(5)(C)(ii)(I) .............................................. 6

42 U.S.C. § 300gg-112(b)(5)(C)(ii)(III) ........................................... 6

42 U.S.C. § 300gg-112(b)(5)(C)(ii)(IV) ........................................... 6

42 U.S.C. § 300gg-112(b)(5)(C)(ii)(V) ............................................ 6

42 U.S.C. § 300gg-112(b)(5)(C)(ii)(VI)............................................ 6

vii

42 U.S.C. § 300gg-112(b)(5)(C)(iii) ................................................... 7

42 U.S.C. § 300gg-112(b)(5)(D) ......................................................... 7

42 U.S.C. §§ 300gg-112(b)(7)(A)(iv), (B)(iv) .................................. 7

42 U.S.C. § 300gg-112(c)(2) ............................................................... 7

**Other Authorities**

26 C.F.R. § 54.9816-1T *et seq.* ........................................................ 3

29 C.F.R. § 2590.716-1 *et seq.* ........................................................ 3

45 C.F.R. § 49.510(c)(4)(iii)(A)-(B) ................................................ 12

45 C.F.R. § 149.130(b)(4)(ii) ............................................................ 18

45 C.F.R § 149.510 ............................................................... 9, 10, 26

45 C.F.R. § 149.510(c)(4)(ii) ............................................................ 18

45 C.F.R. § 149.510(c)(4)(iii)(B) ..................................................... 26

45 C.F.R. § 149.510(c)(4)(iii)(E) ................................................. 12, 26

45 C.F.R. § 149.510(c)(4)(iv) ........................................................... 12

45 C.F.R. § 149.510(c)(4)(vi) .................................................. 12, 14, 15

45 C.F.R. § 149.520 ............................................................................. 9

45 C.F.R. § 149.520(a) ................................................................... 9, 26

45 C.F.R. § 149.520(b)(1) ........................................................ 9, 18, 26

45 C.F.R. § 149.520(b)(2) .................................................. 9, 10, 26, 27

45 C.F.R. § 149.520(b)(2)(i)–(vi) .................................................... 18

45 C.F.R. § 149.520(b)(3) ................................................................. 26

Restatement (First) of Torts § 624 (1938) ................................... 22

Restatement (Second) of Torts §§ 623A-629 (1977) ................................. 22

# INTRODUCTION

Plaintiffs-Appellees LifeNet, Inc. and East Texas Air One, LLC (the "Air Ambulance Plaintiffs") join in full the Opening Brief filed by the Texas Medical Association ("TMA").

This separate brief addresses two issues. First, it demonstrates that the Air Ambulance Plaintiffs have standing to challenge the Final Rule. The Air Ambulance Plaintiffs are "objects" of the No Surprises Act and its implementing regulations, and therefore have standing to challenge those regulations, which deprive the Air Ambulance Plaintiffs of the procedure that Congress mandated. Moreover, uncontroverted evidence demonstrates that the Final Rule's flawed QPA-centric procedures will reduce the amount of payment that the Air Ambulance Plaintiffs receive from the IDR process. The Air Ambulance Plaintiffs thus have standing to challenge the Final Rule.

The second purpose of this brief is to assist the Court in applying the TMA's merits arguments to the statutory and regulatory provisions that govern air ambulance providers' IDR processes. Those provisions are substantially the same, in all material ways, to the provisions cited in the TMA's brief.

## STATEMENT OF ISSUES

The Air Ambulance Plaintiffs respectfully incorporate the TMA's statement of issues.

## STATEMENT OF THE CASE

The Air Ambulance Plaintiffs respectfully incorporate the TMA's statement of the case. In addition, the Air Ambulance Plaintiffs add the following background and context relating to air ambulances and the No Surprises Act ("NSA").

### A.    The Air Ambulance Plaintiffs

Air ambulances play a vital role in responding to medical emergencies. When air ambulances rush to administer lifesaving care, they typically have little information regarding the patient, including the patient's insurance or whether the patient has insurance at all.  More than 85 million Americans—over a quarter of the U.S. population—live farther than a one-hour drive from a Level 1 or Level 2 trauma center. *See* ROA.1655. Without air ambulances, many critically ill and injured patients—particularly in rural areas—would not have timely access to necessary medical care. *See id.* The Air Ambulance Plaintiffs' planes and

helicopters serve their communities by transporting hundreds of critically ill and injured patients each year. *See* ROA.281, 728.

## B.    The No Surprises Act and Air Ambulances

The TMA's brief rightly focuses on various provisions of 42 U.S.C. § 300gg-*111*, which is the principal statute governing the IDR process for all providers *except* air ambulances.[1] A separate and somewhat shorter statute governs air ambulance IDRs: 42 U.S.C. § 300gg-*112*. That separate statute either copies near-verbatim, or else incorporates by reference, nearly every part of 42 U.S.C. § 300gg-*111*. The principal difference between these two statutes, as relevant here, is the list of non-QPA statutory factors that the arbitrator "shall consider" when deciding which party's offer is the appropriate amount of payment. *See* 42 U.S.C.

---

[1] The relevant statutory and regulatory provisions at issue in this case generally appear in triplicate and are identical in all material respects. For ease of reference, this brief—like the TMA's brief—cites the PHS Act provisions in 42 U.S.C., and the PHS implementing regulations in 45 C.F.R., which are enforced by the Department of Health and Human Services ("HHS"). The NSA made parallel amendments to the Employee Retirement Income Security Act ("ERISA"), enforced by the Department of Labor; and the Internal Revenue Code ("IRC"), enforced by the Department of the Treasury. The relevant provisions are also codified at 29 U.S.C. § 1185e(c) (ERISA), and 26 U.S.C. § 9816(c) (IRC). The relevant regulations are similarly codified at 29 C.F.R. § 2590.716-1 *et seq.* (ERISA) and 26 C.F.R. § 54.9816-1T *et seq.* (IRC).

§§ 300gg-111(c)(5)(A)(i), (C)(i) (non-air ambulances); *id.* §§ 300gg-112(b)(5)(A)(i), (C)(i) (air ambulances). The chart below lists the factors for both kinds of IDRs:

| "Considerations in determination" for *non-air ambulance* IDRs. 42 U.S.C. § 300gg-111(c)(5)(C). | "Considerations in determination" for *air ambulance* IDRs. 42 U.S.C. § 300gg-112(b)(5)(C). |
|---|---|
| 42 U.S.C. § 300gg-111(c)(5)(C)(i)(I):<br><br>"[T]he qualifying payment amounts [QPAs] . . . for the applicable year for items or services that are comparable to the qualified IDR item or service and that are furnished in the same geographic region . . . as such qualified IDR item or service." | 42 U.S.C. § 300gg-112(b)(5)(C)(i)(I):<br><br>*Substantially the same.* |
| 42 U.S.C. § 300gg-111(c)(5)(C)(ii)(I):<br><br>"The level of training, experience, and quality and outcomes measurements of the provider or facility that furnished such item or service . . . ." | 42 U.S.C. § 300gg-112(b)(5)(C)(ii)(III):<br><br>"The training, experience, and quality of the medical personnel that furnished such services."<br><br>42 U.S.C. § 300gg-112(b)(5)(C)(ii)(I):<br><br>"The quality and outcomes measurements of the provider that furnished such services." |
| 42 U.S.C. § 300gg-111(c)(5)(C)(ii)(II): | 42 U.S.C. § 300gg-112(b)(5)(C)(ii)(IV): |

| "Considerations in determination" for *non-air ambulance* IDRs. 42 U.S.C. § 300gg-111(c)(5)(C). | "Considerations in determination" for *air ambulance* IDRs. 42 U.S.C. § 300gg-112(b)(5)(C). |
|---|---|
| "The market share held by the nonparticipating provider or facility or that of the plan or issuer in the geographic region in which the item or service was provided." | The "[a]mbulance vehicle type, including the clinical capability level of such vehicle." |
| 42 U.S.C. § 300gg-111(c)(5)(C)(ii)(III):<br><br>"The acuity of the individual receiving such item or service or the complexity of furnishing such item or service to such individual." | 42 U.S.C. § 300gg-112(b)(5)(C)(ii)(III):<br><br>*Same.* |
| 42 U.S.C. § 300gg-111(c)(5)(C)(ii)(IV):<br><br>"The teaching status, case mix, and scope of services of the nonparticipating facility that furnished such item or service." | 42 U.S.C. § 300gg-112(b)(5)(C)(ii)(V):<br><br>The "[p]opulation density of the pick up location (such as urban, suburban, rural, or frontier)." |
| 42 U.S.C. § 300gg-111(c)(5)(C)(ii)(V):<br><br>"Demonstrations of good faith efforts (or lack of good faith efforts) made by the nonparticipating provider or nonparticipating facility or the plan or issuer to enter into network agreements and, if applicable, contracted rates between the provider or facility, as applicable, and the plan or issuer, | 42 U.S.C. § 300gg-112(b)(5)(C)(ii)(VI):<br><br>*Substantially the same.* |

| "Considerations in determination" for *non-air ambulance* IDRs. 42 U.S.C. § 300gg-111(c)(5)(C). | "Considerations in determination" for *air ambulance* IDRs. 42 U.S.C. § 300gg-112(b)(5)(C). |
|---|---|
| as applicable, during the previous 4 plan years." | |
| 42 U.S.C. § 300gg-111(c)(5)(B)(i)(II):<br><br>Any information the IDR entity requests from the parties. | 42 U.S.C. § 300gg-112(b)(5)(B)(i)(II):<br><br>*Same.* |
| 42 U.S.C. § 300gg-111(c)(5)(B)(ii):<br><br>Any additional information submitted by a party relating to an offer. | 42 U.S.C. § 300gg-112(b)(5)(B)(ii):<br><br>*Same.* |

Aside from these differences in the nature of the factors to be considered, the statutory provisions are otherwise substantially the same in all provisions relevant to this case. The following table lays out the corresponding air ambulance statutory provisions for relevant provisions cited in the merits section of the TMA's brief:

| Provisions of 42 U.S.C. § 300gg-111 cited by the TMA Plaintiffs governing *non-air ambulance* IDRs. | Corresponding provisions of 42 U.S.C. § 300gg-112 governing *air ambulance* IDRs. |
|---|---|
| 42 U.S.C. § 300gg-111(a)(2)(B) (directing Departments to establish a QPA calculation methodology). | 42 U.S.C. § 300gg-112(c)(2) ("the term 'qualifying payment amount' has the meaning given |

| | |
|---|---|
| 42 U.S.C. § 300gg-111(a)(3)(E) (defining the QPA as calculated "consistent with the methodology established by the Secretary under paragraph (2)(B)"). | such term in section 300gg–111(a)(3) of this title"). |
| 42 U.S.C. § 300gg-111(c)(2)(A) (Departments shall establish a process "under which . . . a certified IDR entity . . . determines . . . the amount of payment"). | 42 U.S.C. § 300gg-112(b)(2)(A) (same). |
| 42 U.S.C. § 300gg-111(c)(5)(D) (prohibition on considering certain factors in IDR). | 42 U.S.C. § 300gg-112(b)(5)(C)(iii) (same). |
| 42 U.S.C. § 300gg-111(c)(5)(E)(i) (determinations by IDR entities "shall be binding . . ."). | 42 U.S.C. § 300gg-112(b)(5)(D) (incorporating this provision). |
| 42 U.S.C. § 300gg-111(c)(1)(B) (the notification initiating IDR must contain "such information as specified by the Secretary"). | 42 U.S.C. § 300gg-112(b)(1)(B) (same). |
| 42 U.S.C. § 300gg-111(c)(4)(A)–(E) (certification of IDR entities). | 42 U.S.C. § 300gg-112(b)(4)(A) (incorporating this provision). |
| 42 U.S.C. §§ 300gg-111(c)(7)(A)(v), (B)(iv) (reporting and publication requirements re: IDR). | 42 U.S.C. §§ 300gg-112(b)(7)(A)(iv), (B)(iv) (same). |

## C.    The Final Rule, Enacting the New QPA Presumption, Also Affects Air Ambulance Providers

In early 2022, LifeNet sued the Departments for the unlawful QPA presumption contained in their October 2021 interim rulemaking. *See LifeNet, Inc. v. United States Dep't of Health and Hum. Servs.*, 617 F. Supp. 3d 547 (E. D. Tex. 2022) ("*LifeNet I*"). The District Court had already vacated this presumption for non-air ambulance IDRs. *See Texas Med. Ass'n. v. United States Dep't of Health and Hum. Servs.*, 587 F. Supp. 3d 528 (E. D. Tex. 2022) ("*TMA I*"). In response to LifeNet's lawsuit—and for the same reasons as *TMA I*—the District Court vacated the QPA presumption for air ambulance IDRs. *See LifeNet I*, 617 F. Supp. 3d at 561.

On August 26, 2022—one month after the District Court vacated the Departments' original QPA presumption for air ambulance IDRs— the Departments published the Final Rule at issue in this appeal: *Requirements Related to Surprise Billing*, 87 Fed. Reg. 52,618 (August 26, 2022). The Final Rule replaced the regulatory provisions vacated by *TMA I* and *LifeNet I.*

In place of the vacated provisions, the Final Rule essentially enacted a new QPA presumption. As set forth in the TMA's brief, the Final Rule enacts (1) a "double-count-the-QPA" rule, (2) a one-sided QPA-

focused written decision requirement, (3) a "consider-the-QPA-first" mandate, (4) a narrow "related to" requirement, and (5) a lopsided credibility test, all of which apply equally to air ambulance IDRs.

The relevant provisions of the Final Rule were to be codified in four parts of 45 C.F.R § 149.510 (which governs all *non*-air ambulance IDRs) and in one part of 45 C.F.R. § 149.520 (which governs air ambulance IDRs).[2] The separate regulation that applies to air ambulance IDRs, 45 C.F.R. § 149.520, simply incorporates by reference the principal regulation that applies to *all* IDRs: 45 C.F.R. § 149.510. *See* 45 C.F.R. § 149.520(a) (incorporating all definitions applicable to non-air ambulance IDRs); *id.* § 149.520(b)(1) (noting that, "in determining the out-of-network rate to be paid by group health plans and health insurance issuers offering group or individual health insurance coverage for out-of-network air ambulance services, plans and issuers must comply with the requirements of § 149.510" with the addition of air-ambulance specific "additional circumstances" set forth in 45 C.F.R. § 149.520(b)(2)).

---

[2] There were actually three codifications of identical regulations: one each for the PHS Act; ERISA; and the Internal Revenue Code. *See supra* note 1.

This brief, like the TMA's brief, cites the provisions according to these as-yet-to-be-implemented codifications in the Code of Federal Regulations.

The Final Rule affects air ambulance providers in the same way as it affects *non*-air ambulance providers. Each of the Final Rule provisions that are challenged by the Air Ambulance Plaintiffs are either found in or substantially mirror the language of the primary regulation, 45 C.F.R. § 149.510.

The only difference between the Departments' regulations for air ambulance IDRs, and their regulations for all other IDRs, is the list of "circumstances" that the arbitrator "shall consider." The separate air ambulance regulation, 45 C.F.R. § 149.520(b)(2), contains the list of additional statutory factors that Congress instructed arbitrators "shall consider" in an air ambulance IDR. *See supra*, at pp. 4–7 (charts comparing the statutory factors).

The following chart quotes each relevant part of the Final Rule in the order it appears in Sections 149.510 and 149.520:

| Regulatory Text (bold language contains the objectionable QPA-favoring text) | Citation & Effect |
|---|---|
| (iii) Considerations in determination. In determining which offer to select:<br>(A) The certified IDR entity must consider the qualifying payment amount(s) for the applicable year for the same or similar item or service.<br>(B) The certified IDR entity must **then** consider information submitted by a party that relates to the following circumstances . . . . | 45 C.F.R. § 49.510(c)(4)(iii)(A)-(B).<br><br>45 C.F.R. § 149.520(b)(1) (noting that "the requirements of § 149.510" apply to air ambulance IDRs).<br><br>This requires the IDR entity *first* to consider the QPA, and only *then* to consider the other statutory factors. |
| (E) **In weighing the considerations described in paragraphs (c)(4)(iii)(B) through (D) of this section [i.e., all of the statutory factors *other than* the QPA],** the certified IDR Entity should evaluate whether the information is credible **and relates to the offer submitted by either party for the payment amount for the** qualified IDR item or service that is the subject of the payment determination. **The certified IDR Entity should not give weight to information to the extent it is not credible, it does not relate to either party's offer for the payment amount for the qualified IDR item or service, or it is already accounted for by the qualifying payment amount under paragraph (c)(4)(iii)(A) of this section or other credible information under paragraphs (c)(4)(iii)(B) through (D) of this section.** | 45 C.F.R. § 149.510(c)(4)(iii)(E).<br><br>45 C.F.R. § 149.520(b)(3) (near-identical text, applicable to air ambulance IDRs).<br><br>This requires the IDR entity to "not give weight" to any statutory factor, besides the QPA, unless the IDR entity first determines that (i) the factor "relates to the offer" and (ii) is not "already accounted for by" the QPA. The IDR entity is required to make a "credibility" determination as to information relating to the other non-QPA factors, but is *forbidden* to question the "credibility" of the QPA. |

| Regulatory Text (bold language contains the objectionable QPA-favoring text) | Citation & Effect |
|---|---|
| **(iv) Examples. The rules of paragraph (c)(4)(iii) of this section are illustrated by the following examples: ...** | 45 C.F.R. § 149.510(c)(4)(iv).<br><br>45 C.F.R. § 149.520(b)(1) (noting that "the requirements of § 149.510" apply to air ambulance IDRs).<br><br>These five examples each restate the language of 45 C.F.R. § 149.510(c)(4)(iii)(E). |
| (vi) Written decision.<br>. . . (B) The certified IDR Entity's written decision must include an explanation of their determination, including what information the certified IDR Entity determined demonstrated that the offer selected as the out-of-network rate is the offer that best represents the value of the qualified IDR item or service, including the weight given to the qualifying payment amount and any additional credible information under paragraph (c)(4)(iii)(B) through (D) of this section. **If the certified IDR Entity relies on information described under paragraph (c)(4)(iii)(B) through (D) of this section in selecting an offer, the written decision must include an explanation of why the certified IDR Entity concluded that this information was not already reflected in the qualifying payment amount** | 45 C.F.R. § 149.510(c)(4)(vi).<br><br>45 C.F.R. § 149.520(b)(1) (noting that "the requirements of § 149.510" apply to air ambulance IDRs).<br><br>This requires the IDR Entity to do extra work if it "relies on" any of the statutory factors other than the QPA. Specifically, the IDR Entity must somehow explain, in writing, "why" it "concluded that this information was not already reflected in" the QPA. |

## D.    The Decision Below

Following the publication of the Final Rule, the Air Ambulance Plaintiffs sued the Departments under the APA, arguing that the provisions of the Final Rule described above and in the TMA's brief violated the NSA's unambiguous terms and were arbitrary and capricious.[3]   The District Court consolidated the Air Ambulance Plaintiffs' suit with the TMA's challenge to the identical provisions of the Final Rule governing non-air ambulance providers.  ROA.85–86.

On February 6, 2023, the District Court ruled in favor of both sets of plaintiffs in a consolidated opinion and order.

For four reasons, the District Court found that the Air Ambulance Plaintiffs have standing to challenge the Final Rule.  *See* ROA.1851–1855 & nn.8–10.

*First*, the District Court held that the Final Rule's deviations from the statutory IDR process constituted an actionable "procedural injury" because the Air Ambulance Plaintiffs had demonstrated a "reasonable claim of minimal impact" through evidence establishing that the "[Final] Rule *will* harm providers." ROA.1852–53.

---

[3] LifeNet, Inc. filed the original complaint on September 23, 2022. *See* ROA.2002.  An amended complaint adding East Texas Air One as a plaintiff was filed on November 10, 2022.  *See* ROA.653.

*Second,* the District Court found that the Air Ambulance Plaintiffs had standing because they had "established that they will likely suffer financial harm because the Final Rule creates an arbitration process that will cause the systematic reduction of out-of-network reimbursements." ROA.1853. Because the QPA does not "accurately reflect the providers' cost of providing services in most cases," the Air Ambulance Plaintiffs' IDR offers would almost always be "higher and farther from the QPA than the offers submitted by the insurers." *Id.* "The Final Rule's QPA-centric approach will therefore injure Plaintiffs by causing arbitrators to select insurers' offers more often than they would under the process established by the Act." ROA.1854. The result of the Final Rule would be a "systematic reduction of out-of-network reimbursements," which is a "quintessential injury" for standing purposes. ROA.1854.

*Third,* the District Court held that the Air Ambulance Plaintiffs had standing because, as non-participating providers whose "services will be analyzed and valued in the IDR process pursuant" to the Final Rule, they were "'objects' of the final rule." ROA.1855 n.10.

*Fourth*, the District Court rejected the Government's argument that LifeNet lacked standing due to contractual arrangements by which

a third-party (Air Methods Corporation) would compensate LifeNet for its services. *See* ROA.1856. The District Court held that declarations submitted by LifeNet demonstrated that the Final Rule placed it at "significant risk of losing its contract with Air Methods—and thus all related profits." *Id*. This "significant risk" established sufficient financial harm for standing purposes. *Id*.

As for the merits, the District Court held that the challenged provisions of the Final Rule governing air ambulance IDRs and favoring the QPA "conflict[ed] with the [NSA's] unambiguous statutory text and must be set aside." ROA.1857. Because those challenged provisions could not "be rehabilitated," the court rejected the Departments' request for remand without vacatur and vacated the challenged provisions of the Final Rule. *See* ROA.1864. The District Court's merits analysis applies in equal force to the Air Ambulance Plaintiffs.

## STANDARD OF REVIEW

The Air Ambulance Plaintiffs respectfully incorporate the TMA's statement of the standard of review.

## SUMMARY OF ARGUMENT

The District Court correctly found that the Air Ambulance plaintiffs had standing to challenge the Final Rule because (i) they are "objects" regulated by the Final Rule, (ii) uncontroverted evidence shows that the Final Rule's QPA-centric provisions will systematically depress payments for the Air Ambulance Plaintiffs' services, and (iii) the Final Rule deprives the Air Ambulance Plaintiffs of statutory IDR procedures which protect their concrete financial interest in payment for their services.

The District Court's merits ruling is also correct. For all the reasons set forth in the TMA's Opening Brief, the Final Rule's regulations for air ambulance IDRs violate the NSA's plain terms, unlawfully undermine the legislative compromise the statute embodies, and were correctly vacated by the District Court.

## ARGUMENT

### A.    The Air Ambulance Plaintiffs Have Standing

For three separate reasons, the Air Ambulance Plaintiffs have standing to challenge the Final Rule.

### 1. The Air Ambulance Plaintiffs are "Objects" of the Final Rule

*First,* the Air Ambulance Plaintiffs have standing because they are out-of-network providers of air ambulance services and are thus "object[s]" of the NSA and of the Final Rule. *See Contender Farms, L.L.P. v. U.S. Dep't of Agric.*, 779 F.3d 258, 264 (5th Cir. 2015).

When "a plaintiff is an object of a regulation 'there is ordinarily little question that the action or inaction has caused him injury, and that a judgment preventing or requiring the action will redress it.'" *Id.* (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (cleaned up)); *see also, e.g., Duarte ex rel. Duarte v. City of Lewisville*, 759 F.3d 514, 515-21 (5th Cir. 2014) (family members of registered sex offender had standing to challenge ordinance regulating sex offenders); *Meland v. Weber*, 2 F.4th 838, 845 (9th Cir. 2021) (shareholder had standing to challenge law mandating female board representation because shareholder was "one of the objects" of the law); *Owner-Operator Indep. Drivers Ass'n, Inc. v. Fed. Motor Carrier Safety Admin.*, 656 F.3d 580, 585–86 (7th Cir. 2011) (truckers were "objects" of rule requiring on-board recording devices, even though rule directly regulated only truckers' employers). "Whether someone is in fact an object of a regulation is a

flexible inquiry rooted in common sense." *Contender Farms, L.L.P.*, 779 F.3d at 265.

As "nonparticipating [i.e., out-of-network] provider[s]" of air ambulance services, the Air Ambulance Plaintiffs depend upon the NSA's IDR process to obtain compensation, from insurers, for their transportation services to patients.[4] *See* 42 U.S.C. § 300gg-111(a)(3)(G)(i); *id.* § 300gg-112(c)(3); 45 C.F.R. § 149.130(b)(4)(ii); 45 C.F.R. § 149.510(c)(4)(ii). Arbitrators in IDR will analyze, *inter alia*, the Air Ambulance Plaintiffs' training, experience, quality, and outcome measures under the challenged provisions of the Final Rule. *See* 45 C.F.R. § 149.520(b)(2)(i)–(vi). And, under those same provisions, the arbitrators will make binding determinations regarding the monetary value of the Air Ambulance Plaintiffs' services. *See id.* § 149.520(b)(1). "[C]ommon sense" dictates that the Air Ambulance Plaintiffs have standing to challenge that rule. *See Contender Farms, L.L.P.*, 779 F.3d at 265.

---

[4] The NSA allows insurers to initially pay any amount they choose (or nothing at all) for an air ambulance transport. *See* 42 U.S.C. § 300gg-112(a)(3)(A). The burden then shifts to the air ambulance provider to utilize the IDR process to obtain the compensation it believes is owed. *Id.* at § 300gg–112(b)(1)(B).

## 2. The Final Rule Causes Financial Harm

*Second,* the Air Ambulance Plaintiffs have standing because they—like the TMA plaintiffs—are likely to be harmed financially by the Final Rule. "[E]conomic injury is a quintessential injury upon which to base standing." *Texas Democratic Party v. Benkiser*, 459 F.3d 582, 586 (5th Cir. 2006). An economic "injury need not be actualized" to confer the right to sue: "a threatened injury suffices if it is real, immediate, and direct . . . The Supreme Court routinely recognizes probable economic injury resulting from governmental actions that alter competitive conditions." *Texas Ass'n of Mfrs. v. U.S. Consumer Prod. Safety Comm'n*, 989 F.3d 368, 377 (5th Cir. 2021) (finding standing to challenge chemical regulation, based on association's members' production of regulated chemical, despite the lack of any "indication" in the record that the member's chemicals "are used or have been used in children's toys" (internal citations and quotation marks omitted)).

Uncontroverted declarations submitted by the Air Ambulance Plaintiffs establish that—for transports that are subject to the No Surprises Act—the Air Ambulance Plaintiffs' revenue *depends* on the determinations made in the IDR process. *See* ROA.728–729 (Declaration

of President and CEO of East Texas Air One, LLC); ROA.281–287 (Declaration of General Counsel of LifeNet, Inc.); *see also Lujan*, 504 U.S. at 561 (noting that, at summary judgment, a plaintiff may establish standing through "affidavit or other evidence" which provide "specific facts" demonstrating standing). The Air Ambulance Plaintiffs have— and will continue—to participate in the IDR process to resolve disputes over the appropriate reimbursement for their services. ROA.283; ROA.729. They have—and will continue—to submit offers, in IDR that, "in many and perhaps all cases," ROA.283, are higher than (and farther from) the QPA than insurers' offers because the QPA often does not capture the Air Ambulance Plaintiffs' "cost of providing services," ROA.729.

The Final Rule's "thumb on the scale for the QPA . . . will make it more challenging for [the Air Ambulance Plaintiffs'] bids to be chosen in the IDR process," ROA.729, and will "drive out-of-network reimbursement rates to the QPA as a de facto benchmark," ROA.286. Consequently, the "amounts [the Air Ambulance Plaintiffs are] reimbursed for [their] out-of-network services will likely decrease, along with [their] income," relative to payments under a lawful IDR process.

ROA.729. This "high risk" of financial injury establishes the Air Ambulance Plaintiffs' standing. *Texas Ass'n of Mfrs.*, 989 F.3d at 377.

The Air Ambulance Plaintiffs are also injured immediately by the lower valuations that the Final Rule causes IDR entities to give to their services. The Air Ambulance Plaintiffs, like any other for-profit business, must routinely answer the following question: "how much are your services worth?" This question will be asked if they seek to borrow money or obtain capital investments. *See Clinton v. City of New York*, 524 U.S. 417, 431 (1998) (holding that liability contingent upon government's later decision is nevertheless an Article III injury today, because "a substantial contingent liability immediately and directly affects the borrowing power, financial strength, and fiscal planning of the potential obligor.").

The answer to that question—"how much are your services worth?"—now critically depends on the results of the Air Ambulance Plaintiffs' IDR processes. *See* ROA.286 (noting that unfavorable determinations in the IDR process would "instantly devalue LifeNet's services in this critically important market . . .").

That this harm is intangible (for now) does not vitiate the Air Ambulance Plaintiffs' standing. *See Susan B. Anthony List v. Driehaus*,

573 U.S. 149, 158 (2014) (substantial risk of future harm conferred standing); *Clinton*, 524 U.S. at 431 (contingent risk of future harm conferred standing).

Moreover, lower dollar valuations are analogous to injuries recognized at common law. *See Cranor v. 5 Star Nutrition, L.L.C.*, 998 F.3d 686, 693 (5th Cir. 2021) (finding Article III standing, in part, because a claim based on a "single unwelcome text message" bore a close relationship to a claim for "public nuisance" as recognized at common law). This inquiry "is focused on types of harms protected at common law, not the precise point at which those harms become actionable" under common law. *Id.* at 693 (emphasis added) (quoting *Krakauer v. Dish Network*, L.L.C., 925 F.3d 643, 654 (4th Cir. 2019)). Lower-than-appropriate dollar valuations of the Air Ambulance Plaintiffs' services bear a close relationship to the kinds of injuries recognized at common law for untrue and disparaging statements about another's "chattels or intangible things." Restatement (First) of Torts § 624 (1938); *see also* Restatement (Second) of Torts §§ 623A-629 (1977).

### 3. The Final Rule Causes Procedural Injury

*Third*, the Air Ambulance Plaintiffs have standing because the Final Rule works a procedural injury that, as already discussed, imperils their concrete financial interests.

The text of the NSA confers on the Air Ambulance Plaintiffs a "procedural right" to the IDR process. *Texas v. EEOC*, 933 F.3d 433, 447 (5th Cir. 2019); *see* 42 U.S.C. § 300gg-112(b). Congress carefully crafted the IDR process "to protect" plaintiffs' "concrete" financial "interest" in having their air ambulance services appropriately valued and compensated. *Lujan*, 504 U.S. at 572 n.8. Yet the Final Rule unlawfully replaces these balanced statutory procedures with QPA-centric knockoffs. The Air Ambulance Plaintiffs thus need not "meet[] all the normal [standing doctrine] standards for redressability and immediacy." *Id.* at 572 n.7. Instead, they need only to demonstrate "some possibility" that vacating the challenged rules would result in more favorable IDR outcomes. *Texas v. United States (DAPA)*, 809 F.3d 134, 150–51 (5th Cir. 2015) (quotation omitted). The Departments' arguments to the contrary regarding the "procedural injury" doctrine are incorrect for the same reasons set forth in the TMA's brief.

As set forth above, the uncontroverted evidence before the District Court establishes that there is more than merely "some possibility," *id.*, that the Final Rule will harm the Air Ambulance Plaintiffs' outcomes in the IDR process. The Air Ambulance Plaintiffs' declarations demonstrate that the "amounts [the Air Ambulance Plaintiffs are] reimbursed for [their] out-of-network services will likely decrease, along with [their] income" under the Final Rule. ROA.286.  By "driv[ing] out-of-network reimbursement rates to the QPA as a de facto benchmark," ROA.286, the Final Rule's unlawful amendments to the statutory IDR procedures impair the Air Ambulance Plaintiffs' "concrete interest[s]," *Lujan*, 504 U.S. at 572 n.8. The Air Ambulance Plaintiffs thus have standing to challenge the Final Rule.

### 4. The Departments Have Waived Any Separate Challenge Regarding LifeNet's Standing Resulting from LifeNet's Contract with Air Methods

Below, the Government argued that LifeNet lacked standing due to contractual arrangements with a third-party (Air Methods Corporation). *See* ROA.1856. However, the Government does not make this argument on appeal and thus it is waived.  *See JTB Tools & Oilfield Servs., L.L.C. v. United States,* 831 F.3d 597, 601 (5th Cir. 2016).  That waiver is

understandable, since this argument does not apply to the other Air Ambulance Plaintiff, East Texas Air One, L.L.C. *See* ROA.728–729 (Declaration of President and CEO of East Texas Air One, regarding East Texas Air One's IDR submissions).  It is well established that Article III is satisfied so long as just one plaintiff has standing.  *McAllen Grace Brethren Church v. Salazar*, 764 F.3d 465, 471 (5th Cir. 2014) ("[O]nce we determine that at least one plaintiff has standing, we need not consider whether the remaining plaintiffs have standing to maintain the suit.").

## B.    The Final Rule Violates the NSA and Vacatur Should Be Upheld

The Air Ambulance Plaintiffs respectfully incorporate the merits arguments in the TMA's brief, which apply in full to IDRs concerning air ambulance services.

Each of the statutory arguments made by the TMA's brief applies with full force to air ambulance providers and to air ambulance IDRs. As set forth above, *see supra* pp. 4–8 (tables setting forth relevant statutory provisions governing air ambulance and corresponding provisions governing non-air ambulance IDRs), all the Court need do is

transpose the TMA's citations to Section 300gg-111 to the relevant subparagraph of Section 300gg-112.

An equally simple transposition is needed, where the TMA's brief cites the Final Rule provision concerning the factors that the arbitrator "must [] consider," 45 C.F.R. § 149.510(c)(4)(iii)(B). That citation should be transposed to 45 C.F.R. § 149.520(b)(2), which contains the different list of factors applicable in air ambulance IDRs.

Similarly, where the TMA's brief cites to 45 C.F.R. § 149.510(c)(4)(iii)(E)—governing how IDR entities should "[w]eigh[] [the] considerations" in non-air ambulance IDRs—45 C.F.R. § 149.520(b)(3) replicates this "[w]eighing [c]onsiderations" language for air ambulance IDRs with the inclusion of the air-ambulance-specific "additional circumstances."

The remaining regulations governing the IDR process are incorporated for air ambulance IDRs at 45 C.F.R. § 149.520(a) ("[u]nless otherwise stated, the definitions in § 149.30 apply . . .") and 45 C.F.R. § 149.520(b)(1) ("in determining the out-of-network rate . . . for out-of-network air ambulance services, plans and issuers must comply with the requirements of § 149.510" with the addition of air-ambulance specific

"additional circumstances" set forth in 45 C.F.R. § 149.520(b)(2)). *See supra* at pp. 11–12 (table setting forth the relevant regulatory provisions governing air ambulance and non-air ambulance IDRs).

The Air Ambulance Plaintiffs also incorporate the arguments in the TMA's brief demonstrating that the District Court did not abuse its discretion in vacating the challenged provisions of the Final Rule.

## CONCLUSION

For the foregoing reasons and the reasons set forth in the TMA's brief, this Court should affirm the District Court's judgment in full.

Respectfully submitted,

Dated: September 11, 2023

*/s/ Steven Shepard*

STEVEN M. SHEPARD
*Lead Counsel*
STEPHEN SHACKELFORD, JR.
MAX ISAAC STRAUS
JAMES CRAIG SMYSER
SUSMAN GODFREY LLP
1301 Ave. of the Americas, Fl. 32
New York, NY 10019
Tel: (212) 336-8340
Fax: (212) 336-8340
Email:
sshepard@susmangodfrey.com

***Counsel for Plaintiffs-Appellees LifeNet, Inc. and East Texas Air One, LLC***

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 11, 2023, a copy of the above and foregoing was electronically filed with the Clerk of the Court using the CM/ECF system. Notice of this filing will be sent to all counsel of record by operation of the Court's electronic filing system.

*/s/ Steven Shepard*
Steven Shepard

## <u>CERTIFICATE OF COMPLIANCE</u>

This document complies with the type-volume limitation of FED. R. APP. P. 32(a)(7)(B) because, excluding the parts of the document exempted by FED. R. APP. P. 32(f) and Fifth Circuit Rule 32.2, this document contains 4999 words.

This document complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the type-style requirements of FED. R. APP. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14 point Century Schoolbook font.

Dated: September 11, 2023                    */s/ Steven Shepard*
                                              Steven Shepard